EMBRY'S ADMINISTRATOR v. MARY W. and ELLEN E. SIMS.

STATEMENT OF CASE: Mrs. Sims, while keeping a hotel, borrowed money from Embry, with mortgage on hotel building. The time allowed for the payment of the notes was ten years, in annual instalments, with the privilege of discharging one-half of each payment in board. She kept the hotel until 1863. She did receive some boarders, and was always ready to receive

Embry's Adm'r *v.* Mary W. and Ellen E. Sims.

any others he might have sent, until she closed her house at the time stated. None of the notes were taken up. A foreclosure of the mortgage is sought.

1. CONTRACT. *Construction of. Note to be paid in a particular manner.*

    *Held,* Under the circumstances of this case, it is presumed that the parties expected each note containing the privilege, to be paid in board, and if Mrs. Sims was ready during or at the end of the year to furnish board, this would free her from liability to suit for the money, but will not relieve her from the obligation to pay when demand is made in reasonable time, and she refuses to pay, or has become unable to perform her contract.

2. SAME. *Statute of Limitations.* By this contract, Mrs. Sims bound herself to be in readiness for the accommodation of boarders for the whole ten years. However, in this case, the notes are due, as specified on their face, and must be presented or sued on within the period of the Statute of Limitations for a money demand, as the agreement implies that the payee will offer an opportunity for performance.

    Cases cited: Smith *v.* Corn, 3 Head, 117, reviewed Act. 1807. ch. 95, § 1; Code, § 1,690.

3. SAME. *Profits on board. General liability.* Up to the period of Mrs. Sims' failure in 1863, she will be entitled to reduce her notes to what the proof shows the profits would be to her on boarders—that is, during that period, the notes containing the privilege. After cessation of her business in 1863, it was her misfortune to be unable to perform her part of the contract, and from that time she must be held liable without reduction.

---

FROM FRANKLIN.

---

Appeal from the Chancery Court. JNO. P. STEELE, Chancellor.

A. S. MARKS for Embry's Administrator.

L. METCALF for Mary W. and Ellen E. Sims.

FREEMAN, J., delivered the opinion of the Court.

This bill is filed to enforce a vendor's lien on a certain tavern-house and lot in the town of Win-

chester, sold by the complainant in January, 1856, to Mrs. Martha Sims, the mother of defendants. A number of notes were given by Mrs. Sims for the purchase-money, which amounted to four thousand dollars, the same being payable in annual instalments of $400 each, but it was agreed, as charged in the bill, that one-half the annual instalments might be discharged in board at the hotel, for which purpose the house had been purchased. There seems to be no controversy as to the notes payable in money. The only question submitted for our decision is, as to the notes to be paid in board, which are copied in the record. They are all in the same form. The first is as follows: "One day after date I promise to pay Clifton A. Embry or order, two hundred dollars, which may be discharged in board at cash prices, for value received.     M. G. Sims."

The counsel submit with the record an agreement to the effect that the Court shall decide "whether or not defendants are liable for the amount of the board notes not shown to have been paid under the contract of Mrs. Sims; and if so liable, whether the full amount and interest shall be decreed, or whether a deduction should be made for profits lost to defendants by failure of Embry to supply boarders."

It is insisted in the answer by the heir, who is of age, "that Mrs. Sims kept her hotel open for the purposes of general entertainment as a tavern, and also for boarding all who might apply therefor until January, 1864, and that she boarded all persons sent

to her by Embry, in compliance with her contract, and was always ready to fulfill her engagement with complainant, and was not at any time at fault in refusing to pay her contract for board, as aforesaid. It is therefore claimed the obligation was performed up to the time of her death, which occurred about January, 1864. It appears, however, from the proof, that the hotel was probably closed, either on account of ill health of Mrs. Sims, or the occupation of the country by the Federal army, in July, 1863. The proof shows that up to the time the hotel was closed, say in July, 1863, it was kept open for all boarders, and therefore Mrs. Sims was ready to perform this part of her contract. The question presented is as to the extent of liability on these notes growing out of the state of facts, in connection with the contract as appears on the face of the note itself.

The case of *Smith* v. *Corn, for use, etc.,* 3 Head, 117, was this: A .writing was made by Smith, as follows: "Due Thomas K. Corn, or bearer, twenty-five dollars, for value received of him, *which may be* discharged in feeding droves of stock of any kind, keeping travellers, ferriages, etc., at cash . prices, at my stand at the mouth of Chucky, in Tennessee." The question submitted to the Court in that case by agreement was, whether, the plaintiff could recover the amount of the money, in the absence of all proof showing that defendant had been called on to discharge the notes in the manner stipulated; or that he had disabled himself so as to be unable to discharge them, or

had been in default in any respect in the performance of the obligation on his part, except a refusal to pay money in satisfaction of the notes.

The Circuit Judge held that plaintiff could recover the money. This Court, reversing his judgment, held that this was to change the contract of the parties, and force upon the defendant a mode of payment different from that agreed on. It was said in that case that it was not within the Act of 1807, ch. 95, § 1, Code, § 1,690, as to property contracts, providing that "if the time or place, or either, be not ascertained, it is the duty of the payee to give the payor ten days notice of the time or place, etc. As the place was fixed, but not the time, the legal effect of the obligation being that the payor should be at all times ready, so long as the obligation remained in force, ready and willing to perform his undertaking, in all or either of the stipulated modes and at the election of the payee. "Such readiness and willingness," says the Court, "was a complete defence for him. The Court goes on to say, the defendant need only to be in readiness at the place fixed, whenever called on, and if never called on to perform his obligation, he was discharged from the obligation of the contract.

It is obvious that the generality of the language in the above opinion is to be taken in reference to the facts of the case in hand in some of its statements. As it might be inferred that the obligation was to continue for all time to come, and the readi-

ness to perform be commensurate with it. This would not be to carry out the fair meaning of the contract arrived at by placing ourselves in the circumstances of the parties at the time. The party should be required to make the demand for performance within a reasonable time, to be arrived at by taking into consideration the surrounding circumstances. It could not fairly be held that he must continue his readiness to perform this kind of contract, for all time to come, nor is it accurate to say, by being ready "he was discharged from* the obligation of his contract." He was only free from liability to be sued until performance was demanded and refused, or he failed from inability to perform within a reasonable time. The Court, in the above case, says in conclusion of the above opinion, that the principle they lay down is the same as if the defendant had reserved to himself the privilege of discharging the the note in some specific article. In such a case, the defendant must aver readiness to perform on the day and at the place fixed, and has ever since continued ready. This we deem correct, with the qualification that there should be a demand for performance, where the payor has no right to enforce performance, but it is to be requested by the payee. That request should be made within a reasonable time. A party could not be held to continue to keep a hotel for all time, in order to meet an obligation of this kind in the hands of a party who failed or refused to give an opportunity to a ready

payor to perform his agreement.   Passing from this
case, let us apply these principles to the above case.
The notes, we may assume, were payable in board, at
the hotel purchased.   Such being the fair interpreta-
tion of the contract in the light of the surrounding
circumstances.   They were due in one, two, three,
four years respectively, and so on for the ten years,
each falling due at the end of the year, to be dis-
charged by a boarder being received and kept during
the year.   Now, certainly readiness to perform during
the year, or at any rate at the end of the year,
ought to be a defence against being sued for the
money, as want of performance is the result of the
failure of the payee to furnish the boarder agreed
on.   This would not discharge the obligation to per-
form, however, when called on in a reasonable time,
and in this case we may say that there was an obli-
gation to pay a note in this way every year for ten
years, that the party had impliedly bound herself to
be in the business for that period, ready to meet her
obligation.   However, it is perhaps safer to hold that
in this case the notes are due as specified on their
faces, and must be demanded or sued on within the
period of the Statute of Limitations, on a money
demand, as it is an obligation to pay money, with
the privilege of paying in board, having the implied
qualification from the nature of the agreement that
the payee shall offer an opportunity for performance.

The payor having paid the earlier notes, as shown
by the report of the Clerk and Master, or furnished

board, though the notes seem not to have been taken up, and no plea of the Statute of Limitations put in, even if it would have been available, her readiness to perform up to the time of cessation of her business in July, 1863, can not be held to have discharged the obligation, but only to have freed her from suit, without demand made and refusal. When a demand was made after she had ceased to be able to perform, then by her obligation she was bound to be ready by force of her contract; but as her failure up to the time of cessation of her business was not her fault, but that of the payee, we think the sounder equity is that up to that period, on all due notes, she should only pay the value of the board—that is, she is entitled to reduce her notes to what the proof shows the profit would be to her on boarders, that is, during that period one-half the agreed price. After cessation of her business in July, 1863, it was her misfortune to be unable to perform her contract, and from that time she must be held liable. As the party had voluntarily ceased business before her death some six months, we need not discuss the question of effect of her death, upon a contract so personal to herself as this in its performance. This might, in a proper case, present a question of some interest, but does not properly arise in this case.

The decree below will be modified in accordance with this opinion, and the calculations of amount made on this basis, or a reference to the Clerk of this Court had, if deemed proper. The lot will

be sold by the Clerk, after giving time to pay the money into Court. Costs paid out of the fund.